UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JILL LAMP,

        Plaintiff,                             Hon. Paul L. Maloney

v.                                                 Case No. 1:20-cv-1234

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.  Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that the Commissioner's decision be affirmed.

## STANDARD OF REVIEW

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *Tucker v. Commissioner of Social Security*, 775 Fed. Appx. 220, 225 (6th Cir., June 10, 2019). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her

decision and whether there exists in the record substantial evidence supporting that decision.  *Id.* at 224-25.  Substantial evidence is more than a scintilla, but less than a preponderance, and constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Livingston v. Commissioner of Social Security*, 776 Fed. Appx. 897, 898 (6th Cir., June 19, 2019).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *Biestek v. Commissioner of Social Security*, 880 F.3d 778, 783 (6th Cir. 2017).  The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *Moruzzi v. Commissioner of Social Security*, 759 Fed. Appx. 396, 402 (6th Cir., Dec. 21, 2018).  This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *Luukkonen v. Commissioner of Social Security*, 653 Fed. Appx. 393, 398 (6th Cir., June 22, 2016).

## BACKGROUND

Plaintiff was 39 years of age on her alleged disability onset date.  (ECF No. 10-5, PageID.241).  She completed high school and worked previously as an administrative clerk and apartment manager.  (ECF No. 10-2, PageID.64-65).  Plaintiff applied for benefits on January 16, 2019, alleging that she had been disabled since February 1, 2015, due to migraines, iron deficiency, sciatica, anxiety,

depression, ADHD, memory and concentration difficulties, left-sided paralysis, bowel obstruction, left-sided lower extremity neuropathy, hypoglycemia, fibromyalgia, and scoliosis. (ECF No. 10-5, 10-6, PageID.241-43, 268).

Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). Following an administrative hearing, ALJ Michael Condon, in an opinion dated December 4, 2019, determined that Plaintiff did not qualify for disability benefits. (ECF No. 10-2, PageID.43-125). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f). If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a non-exertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff bears the burden to demonstrate she is entitled to disability benefits and she satisfies her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age,

-3-

education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A). While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *O'Neal v. Commissioner of Social Security*, 799 Fed. Appx. 313, 315 (6th Cir., Jan. 7, 2020).

The ALJ determined that Plaintiff suffers from: generalized anxiety disorder, ADHD, major depressive disorder, and scoliosis, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.46-52).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the ability to perform light work subject to the following limitations: (1) she can lift/carry 20 pounds occasionally and 10 pounds frequently; (2) during an 8-hour workday, she can sit and stand/walk for 6 hours each; (3) she can occasionally climb ramps and stairs, but cannot climb ladders, ropes, or scaffolds; (4) she can understand, remember, and apply information to perform no more than simple, routine, and repetitive tasks; (5) she can focus on and complete simple tasks and make simple decisions; (6) she can adapt to routine changes in the workplace; (7) she can have no more than occasional contact with the general public; (8) she is

limited to performing low stress jobs that do not have fast-paced production requirements, that is she cannot perform assembly line or conveyor belt jobs or jobs that require a per minute or per hour production quota.   (ECF No. 10-2, PageID.52).

The ALJ found that Plaintiff was unable to perform her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that there exists in the national economy a significant number of specific jobs which Plaintiff can perform, his limitations notwithstanding. *O'Neal*, 799 Fed. Appx. at 316.   In satisfying this burden, the ALJ may rely on a vocational expert's testimony.   *Ibid*.

In this case, a vocational expert testified that there existed approximately 220,000 jobs in the national economy which an individual with Plaintiff's RFC could perform.   (ECF No. 10-2, PageID.115-19).   This represents a significant number of jobs.   *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").   Accordingly, the ALJ concluded that Plaintiff was not entitled to benefits.

I.   **Residual Functional Capacity**

A claimant's RFC represents the "most [a claimant] can still do despite [her] limitations." *Sullivan v. Commissioner of Social Security*, 595 Fed. Appx. 502, 505 (6th Cir., Dec. 12, 2014); *see also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule").

Plaintiff argues that she is entitled to relief because the ALJ's RFC assessment is not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ erred by failing to include in his RFC assessment any limitations to account for her "inability to sustain concentration, persistence, or pace at a level commensurate with competitive employment." As previously noted, the ALJ concluded that Plaintiff experiences significant non-exertional limitations. As the ALJ discussed in detail, however, the record does not support the argument that Plaintiff's emotional impairments limit her ability to function to a greater degree.

As the ALJ noted, examinations conducted prior to the expiration of Plaintiff's insured status revealed that Plaintiff was alert and oriented, exhibited normal cognition, engaged appropriately in conversation, and exhibited intact attention and concentration. (PageID.585, 599, 647, 676, 682, 707-08, 739, 771, 986, 1321-23, 1594). On January 28, 2015, shortly before the expiration of her insured status, Plaintiff reported that her prescribed medications were "going pretty well for her

focusing" and "help[ing] her a lot as well [with] anxiety [and] mood stability."  (ECF No. 10-9, PageID.647).  Treatment notes dated March 28, 2015, indicate that Plaintiff "appears calmer."  (ECF No. 10-8, PageID.616).

The ALJ is tasked with determining a claimant's RFC.  *See* 20 C.F.R. §§ 404.1546(c), 416.946(c).  While the ALJ may not "play doctor" and substitute her own opinion for that of a medical professional, the ALJ is not required to tailor her RFC assessment to any particular opinion or item of medical evidence.  *See, e.g., Poe v. Commissioner of Social Security*, 342 Fed. Appx. 149, 157 (6th Cir., Aug. 18, 2009).  Instead, the ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity."  *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004).

This is precisely what the ALJ in this matter did and the ALJ's RFC assessment is supported by substantial evidence.  There is no doubt that Plaintiff experiences significant non-exertional limitations.  The ALJ's RFC finding, however, accounts for such by restricting Plaintiff to a very limited range of work.  The ALJ's RFC assessment is supported by substantial evidence.  Plaintiff's argument for relief is simply that the ALJ should have weighed and evaluated the evidence differently.  This is not grounds for relief, however.  Accordingly, this argument is rejected.

## II.   Medical Source Opinion

On June 14, 2017, nurse Fred Boothby completed a mental RFC form report regarding Plaintiff's ability to function. (ECF No. 10-7, PageID.357-59). Boothby asserted that Plaintiff was "moderately" or "markedly" limited in all 20 areas assessed. (*Id.*, PageID.357-58). Boothby further asserted that Plaintiff "is not capable of working." (*Id.*, PageID.359). On June 28, 2018, Boothby completed a similar form, concluding that Plaintiff was: (1) seriously limited"; (2) "unable to meet competitive standards"; or (3) possessed "no useful ability to function" in 16 areas. (ECF No. 10-8, PageID.367-68). In four additional areas, Boothby asserted that Plaintiff experienced either "marked" or "moderate" limitation. (*Id.*, PageID.368). Boothby further asserted that Plaintiff was unable to "manage benefits in. . .her own best interest." (*Id.*, PageID.369).

Also, on July 18, 2018, Boothby provided a sworn statement to Plaintiff's counsel in which he asserted that Plaintiff is "unable to work by herself," but was likewise unable to work with others because "she would be too busy talking with her coworkers on and on about things that have nothing to do with work related matters." (*Id.*, PageID.364). Boothby further asserted that Plaintiff had experienced this degree of limitation since he first met with her in September 2014. (*Id.*, PageID.365). The ALJ, however, found Mr. Boothby's opinions "not persuasive." (ECF No. 10-2, PageID.62-63). Plaintiff argues that she is entitled to relief because the ALJ's assessment of Boothby's opinions is not supported by substantial evidence.

Because Plaintiff filed her application after March 27, 2017, the ALJ evaluated the medical opinions pursuant to 20 C.F.R. § 416.920c. This regulation provides that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," even an opinion from a treating source. 20 C.F.R. § 416.920c(a). Instead, the ALJ is required to articulate his determination of the persuasiveness of a medical opinion "in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id.* § 416.920c(b)(1).

These factors include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors which tend to support or contradict the opinion. *Id.* § 416.920c(1)-(5). The ALJ must explain his consideration of the supportability and consistency factors, but absent circumstances not present here, is not required to explain how the remaining factors were considered. *Id.* § 416.920c(b)(2), (3). The regulations define "supportability" and "consistency" as follows:

(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* § 416.920c(c)(1)-(2).

The ALJ identified multiple reasons for discounting Mr. Boothby's opinions. First, the ALJ correctly noted that Boothby did not offer his opinions until 2-3 years after the expiration of Plaintiff's insured status. (ECF No. 10-2, PageID.62). As the ALJ also noted, Boothby's opinions were inconsistent with his own contemporaneous treatment notes prior to the expiration of Plaintiff's insured status. (*Id.*, PageID.62-63). This conclusion is supported by substantial evidence. (ECF No. 10-8, 10-9, PageID.370-800). The ALJ also observed that Boothby's opinions were not supported by the medical record. (ECF No. 10-2, PageID.62-63). This conclusion is likewise supported by substantial evidence as discussed above. Accordingly, this argument is rejected.

### III.   The ALJ Properly Assessed Plaintiff's Subjective Allegations

At the administrative hearing, Plaintiff testified that she experienced anxiety while performing a previous job involving childcare. (ECF No. 10-2, PageID.97-99). Plaintiff's husband testified that prior to the expiration of Plaintiff's insured status, Plaintiff was unreliable and could not be counted on to perform routine tasks. (*Id.*, PageID.105-10). Plaintiff's husband also reported that Plaintiff would often just remain in bed throughout the day obsessing over matters related to her health. (*Id.*, PageID.106-08). The ALJ, however, discounted Plaintiff's subjective allegations on the ground that such were "not fully supported by the record." (ECF No. 10-2, PageID.59). Plaintiff argues that she is entitled to relief because the ALJ improperly discounted her subjective allegations.

While "pain alone, if the result of a medical impairment, may be severe enough to constitute disability," *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984), a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled."  20 C.F.R. § 404.1529(a); *see also*, *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009).

Instead, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard.  First, it must be determined whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms.  *See* Titles II and XVI: Evaluation of Symptoms in Disability Claims, Social Security Ruling 16-3p, 2016 WL 1119029 at *3-4 (S.S.A., Mar. 16, 2016).  Next, the intensity and persistence of the claimant's symptoms are evaluated to determine the extent to which such limit his ability to perform work-related activities.  *Id.* at *4-9.[1]

As is also well recognized, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms."  *Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801

---

[1] Social Security Ruling 16-3p rescinded Social Security Ruling 96-7p.  *Id.* at *1.  However, the adoption of this new Social Security Ruling did not alter the analysis for evaluating a claimant's subjective statements.  Instead, as the Social Security Administration stated, it was simply "eliminating the use of the term 'credibility' [so as to] clarify that that subjective symptom evaluation is not an examination of an individual's character."  *Ibid.*  As courts recognize, aside from this linguistic clarification, "[t]he analysis under SSR 16-3p otherwise is identical to that performed under SSR 96-7p."  *Young v. Berryhill*, 2018 WL 1914732 at *6 (W.D. Ky., Apr. 23, 2018).

(6th Cir., July 29, 2004). But, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Ibid.* It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. *See, e.g., Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) ("[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable").

As discussed above, the medical record supports the ALJ's conclusion that Plaintiff's emotional impairments are not as severe or as limiting as Plaintiff asserts. Plaintiff does not articulate any error in the ALJ's analysis, but rather urges the Court to re-weigh the evidence and reach a different conclusion. As already noted, this the Court cannot do. The ALJ articulated a clear rationale for his conclusions regarding Plaintiff's subjective allegations and the ALJ's conclusions are supported by substantial evidence. Accordingly, this argument is rejected.

## **CONCLUSION**

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be affirmed.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C).   Failure to file objections within such time waives the right to appeal the District Court's order.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: June 13, 2022

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge